**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| JESUS ARREGUIN SANDOVAL and VICTOR MANUEL RAMIREZ, *on behalf of themselves, FLSA Collective Plaintiffs, and the Class,*<br><br>                              Plaintiffs,<br><br>          v.<br><br>LANDRY'S, INC.,<br>MCCORMICK & SCHMICK RESTAURANT CORP.<br>          d/b/a MASTRO'S STEAKHOUSE,<br>675 HUDSON VAULT, LLC,<br>          d/b/a DOS CAMINOS, and<br>JOHN DOE CORPORATIONS 1-100,<br><br>                              Defendants. | Case No:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

---

Plaintiffs JESUS ARREGUIN SANDOVAL and VICTOR MANUEL RAMIREZ ("Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants LANDRY'S, INC., MCCORMICK & SCHMICK RESTAURANT CORP. d/b/a MASTRO'S STEAKHOUSE, and 675 HUDSON VAULT, LLC., d/b/a DOS CAMINOS, and JOHN DOE CORPORATIONS 1-100, (collectively, the "Defendants") and state as follows:

**INTRODUCTION**

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that they and similarly situated individuals are entitled to recover from Defendants: (1) unpaid tips due to an illegal tip retention policy, (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiffs also allege that, pursuant to the New York Labor Law ("NYLL"), they and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages due to an invalid tip credit policy, (2) unpaid tips due to an illegal tip retention policy, (3) unpaid wages due to time-shaving, (4) unpaid wages due to an underpayment of paid time off ("PTO") such as sick leave, (5) statutory penalties, (6) liquidated damages, and (7) attorneys' fees and costs.

3.      Defendant LANDRY'S INC. owns and operates hundreds of dining, hospitality, entertainment, and gaming brands and destinations throughout the United States through JOHN DOE CORPORATIONS 1-100. As part of its business, Defendant LANDRY'S INC. operates dozens of branded restaurant concepts, many of which have multiple restaurant locations under a single branded concept. Those brands (each of which has at least one restaurant operating under its concept) include the following:

1) Brenner's Steakhouse
2) Bristol
3) Chart House
4) Del Frisco's Double Eagle Steakhouse
5) Del Frisco's Grille
6) Devon
7) Grotto
8) J. Gilbert's
9) La Griglia
10) Mastro's Steakhouse (Plaintiff RAMIREZ's Brand of Employment)
11) Morton's Grille
12) Morton's The Steakhouse
13) The Oceanaire
14) Palisade
15) Palm
16) Portland City Grill
17) Peohe's
18) Simms Steakhouse
19) Strip House
20) The Steakhouse
21) Willie G's Seafood
22) Vic & Anthony's Steakhouse
23) Aquarium Restaurant
24) Babin's Seafood House
25) Bill's Bar & Burger
26) Bloom & Bee
27) Blue Fin
28) Bouchée Patisserie

29) Brick House Tavern + Tap

30) Bubba Gump Shrimp Co.

31) Cadillac Bar

32) Cadillac Ranch

33) Claim Jumper

34) Clinkerdagger

35) Columbus Fish Market

36) Cutters crabhouse

37) Craft F&B

38) Dos Caminos (Plaintiff SANDOVAL's Brand of Employment)

39) Fish Tales

40) Fisherman's Wharf

41) Gandy Dancer

42) Grand Concourse

43) Henry's Tavern

44) Horatio's

45) Houlihan's

46) Jake's Famous Crawfish

47) Jake's Grill

48) Joe's Crab Shack

49) Kincaid's

50) King Ranch Texas kitchen

51) Landry's Seafood House

52) Lillie's Asian Cuisine

53) Maggie Bluffs

54) Mai Tai Bar

55) McCormick & Schmick's

56) Mitchell's Fish Market

57) Mitchell's Steakhouse

58) Pizza Oven

59) Rainforest Cafe

60) Red Sushi

61) River Crab

62) Rusty Pelican

63) Saltgrass Steak House

64) Scott's Bar & Grill

65) Simon & Seafort's Saloon & Grill

66) Skates on the Bay

67) Stanley & Seafort's Steak, Chop & Fish House

68) T-REX Cafe

69) The Boathouse Restaurant

70) Troy Liquor Bar

71) Yak & Yeti

(Collectively, along with any LANDRY's INC., their operating entities JOHN DOE CORPORATIONS 1-100, and other restaurants not listed herein, the "Restaurants").

4.      Plaintiffs, putative collective members, and putative class members are all current and former non-exempt employees, including, but not limited to those working as servers, bussers, runners, hostesses, bartenders, food runners, and dishwashers, chefs, line-cooks for Defendants at the Restaurants. Plaintiffs and similarly situated workers were victims of Defendants' systematic policies and practices designed to underpay wages, unlawfully retain tips and gratuities, and deny legally mandated premiums and benefits in violation of protections afforded under the FLSA and the following State laws and regulations in effect in the States where Defendants do business:

1)   Alaska: Alaska Wage and Hour Act, Alaska Statute §23.10.050 *et seq.*;

2)   Arizona: Arizona Fair Wages and Healthy Families Act, A.R.S. § 23-340 *et seq.*, and the Arizona Minimum Wage Act Practice and Procedure A.A.C. R20-5-1201 *et seq.*;

3)   Arkansas: Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.*;

4) California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;

5) Colorado: Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.,* and the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101 *et seq.*;

6) Connecticut: Connecticut Wage Act Conn. Gen. Stat. §§31-58, *et seq.*;

7) District of Columbia: District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*;

8) Florida: Florida's Unpaid Wages Statute, Fla. Stat. 448.08 *et seq.*;

9) Georgia: Georgia Minimum Wage Law, Official Code of Georgia Annotated O.C.G.A. § 34-4 *et seq.*;

10) Hawaii: Hawaii Payment of Wages and other Compensation, Hawaii Revised Statutes Title 21 § *388-1 et seq.;*

11) Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;

12) Indiana: Indiana Wages Hours and Benefits, Ind. Code §22-2-2 *et seq.* Indiana Frequency of Wage Payments Ind. Code §22-2-5 *et seq.*;

13) Iowa: Iowa Wage Payment Collection Law, Iowa Code §91A *et seq.*;

14) Kansas: Kansas Labor and Industries Law, Kan. Stat. Ann. §44-1201 *et seq.*;

15) Kentucky: Kentucky Wage Statutes, K.Y. Rev. Stat. Ann. §§ 337.275 *et seq.*;

16) Louisiana: Louisiana's Wage Payment Act, Louisiana Revised Statutes §23:631 *et seq.*;

17) Maryland: Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment Collection Law, Lab. & Empl. § 3-501 *et seq.*;

18) Massachusetts: Massachusetts Minimum Fair Wage Law, Mass. Gen. L. ch. 151, §1A *et seq.*;

19) Michigan: Michigan Workforce Opportunity Wage Act, MCL §§ 408.411, *et seq.*;

20) Minnesota: Minnesota Fair Labor Standards Act, Minn. Stat. § 177.25, and the Minnesota Payment of Wages Act, Minn. Stat. § 181.101 *et seq.*;

21) Missouri: Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500 *et seq.*;

22) Nebraska: Nebraska's Wage and Hour Act, Neb. Rev. Stat. § 48-1201 *et seq.*, and the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 *et seq.*;

23) Nevada: Nevada Minimum Wage Amendment of the Nevada Constitution, Nev. Const. art. 15, § 16, and the Nev. Rev. Stat. Chapt. 60,

24) New Jersey: New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq.*; and the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq.*;

25) New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.*;

26) North Carolina: North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1, *et seq.*;

27) Ohio: Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.*;

28) Oklahoma: Oklahoma General Wage Law, O.S. §§40-165.1. *et seq.*;

29) Oregon: Oregon Minimum Wage Law, Oreg. Rev. Stat. §51-653, and the Oregon Rules Regulating Minimum Wage, Overtime and Working Conditions OAR 839-020-0000, *et seq.*;

30) Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;

31) Puerto Rico: Puerto Rico Working Hours and Days Laws, 29 L.P.R.A. §§271, *et seq.*;

32) South Carolina: South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.*;

33) Texas: Texas Minimum Wage Act, Texas Labor Code § 62.001 *et seq.*;

34) Virginia: Virginia Minimum Wage Act, VA Code § 40.1 *et seq.*;

35) Washington: Washington Minimum Wage Act, R.C.W. 49.46.005, *et seq.*; and Washington Minimum Wage Rules, WAC 296-126 *et seq.*;

(collectively, with any other States within which Defendants do business, the "Relevant State Wage and Hour Laws" or "RSWHL").

5.      To the extent that gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws) or claims seeking damages for failure to pay for all hours of work are not covered by the protection of a State's wage laws, Plaintiffs further allege that they and others similarly situated are entitled to recover from Defendants, the following pursuant to breach of contract and unjust enrichment: (1) wrongfully withheld or diverted payments, (2) punitive damages due to egregious conduct, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391.

8.      This Court has personal jurisdiction over Defendant LANDRY'S, INC. with respect to all claims asserted herein. Although Defendant LANDRY'S, INC. is nominally organized under the laws of Delaware and maintains a corporate address in Texas, it is subject to general personal jurisdiction in this State because its New York operating entities — including Defendants

5

MCCORMICK & SCHMICK RESTAURANT CORP. d/b/a MASTRO'S STEAKHOUSE, 675 HUDSON VAULT, LLC d/b/a DOS CAMINOS, and those JOHN DOE CORPORATIONS 1-100 assigned to Restaurants located in New York — are not separate, independently operating corporations, but are mere departments, alter egos, and instrumentalities of Defendant LANDRY'S, INC., such that their continuous and systematic contacts with New York are properly imputed to Defendant LANDRY'S, INC., which is therefore at home in New York.

## **PARTIES**

9.     Plaintiff JESUS ARREGUIN SANDOVAL ("Plaintiff SANDOVAL") was and is a resident of Queens County.

10.     Plaintiff VICTOR MANUEL RAMIREZ ("Plaintiff RAMIREZ") was and is a resident of Hudson County.

11.     Defendant LANDRY's INC. owns and operates the Restaurants, including those where Plaintiffs worked: "Mastro's Steakhouse" and "Dos Caminos." As a matter of corporate form, Defendants assign to each brand, and each individual Restaurant location within that brand, a nominal corporate entity—often named for the premises or location of that Restaurant—and hold that entity out as the Restaurant's owner and manager. In reality, the Restaurants are not independently owned, managed, or operated by these nominal entities. Rather, each nominal entity (JOHN DOE CORPORATIONS 1-100) is a subsidiary or instrumentality of, and each Restaurant is in fact owned, operated, and controlled by, a common parent company: Defendant LANDRY's INC.

12.     For example, while Defendant 675 HUDSON VAULT, LLC was nominally designated as the owner and manager of the DOS CAMINOS restaurant located at 675 Hudson Street, New York, NY 10014, that Restaurant was, in reality, owned, operated, and controlled by

6

Defendant LANDRY'S, INC. as a wholly owned subsidiary of, and under the ultimate ownership and control of, Defendant LANDRY'S, INC.

13.    The same was true for Defendant MCCORMICK & SCHMICK RESTAURANT CORP., which was nominally designated as the owner and manager of the MASTRO'S STEAKHOUSE restaurant located at 1285 6th Ave, New York, NY 10019, that Restaurant was, in reality, owned, operated, and controlled by Defendant LANDRY'S, INC. as a wholly owned subsidiary of, and under the ultimate ownership and control of, Defendant LANDRY'S, INC.

14.    At all relevant times, Defendants have functioned as joint employers of Plaintiffs and similarly situated employees. the FLSA Collective Plaintiffs, and the Class Members, and as a single integrated enterprise, because they share common ownership, engage in related activities, and have a common business purpose:

(a) The Restaurants share common ownership, in that all of them are owned, operated, and controlled by LANDRY'S, INC. *See* **Exhibit A,** Landry's website listing its owned dining brands; **Exhibit B**, News Article Listing Brands that Landry's Owns.

(b) The Restaurants are managed and marketed in common: they are advertised together on Defendant LANDRY'S, INC.'s website, found at www.landrysinc.com, which links to its individual brands such as www.doscaminos.com and where each of the Restaurants' respective menus and delivery services are listed. *See* **Exhibit C**, Defendants' Main Webpage.

(c) The Restaurants share common management of their human-resources and hiring functions, which are coordinated by LANDRY'S, INC.—prospective employees at every Restaurant are directed to apply through career-page links found on LANDRY'S, INC.'s official website. *See* **Exhibit D**, Landry's Job Application Portal.

(d) The Restaurants are managed under common, centralized employment standards, as reflected by open-position postings across states that contain identical descriptions of the roles and identical qualification requirements. *See* **Exhibit D**, Landry's Job Application Portal; **Exhibit E**, Landry's Job Descriptions.

(e) The Restaurants share common management of labor relations: they operate under shared payroll methods and a single, centralized system of labor relations administered by LANDRY'S, INC. *See* **Exhibit F**, Defendants' Trademark.

(f) The Restaurants' activities are integrated and interrelated: Defendants advertise and offer gift cards which are transferrable among the Restaurants. *See* **Exhibit G**, Defendants' "Gift Card" Webpage.

7

(g) The Restaurants share common ownership and instruct each employee regardless of Restaurant location that the common payroll address is the same as LANDRY'S, INC.'s corporate address located at 1510 West Loop South, Houston, TX 77027. *See* **Exhibit H**, Paystubs for Plaintiffs.

(h) Defendant LANDRY's INC.'s human resources personnel have submitted declarations on other matters admitting centralize functions across the Restaurants. *See* **Exhibit I**, Declarations.

15.     Defendant LANDRY'S INC. is a foreign business corporation organized under the laws of the State of Delaware, with a principal place of business located at 1510 West Loop S, Houston, TX 77027, and address for service located at 1510 West Loop S, Houston, TX 77027.

16.     At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and the RSWHL.

17.     At all relevant times, the work performed by Plaintiffs and Class Members was directly essential to the business operated by Defendants.

## NATIONWIDE – FLSA COLLECTIVE ACTION ALLEGATIONS

18.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA §16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt tipped employees (including, but not limited to, servers, bussers, runners, hostesses, bartenders, food runners, among others) employed by Defendants at any of the Restaurants on or after the date that is six years (plus 228 days extension of tolling during the COVID pandemic for New York State locations) before the filing of the Complaint ("FLSA Collective Plaintiffs").

19.     At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs have been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to pay employees from whom a tip-credit allowance was taken all wages owed.  Defendants failed to properly distribute earned tips and were not entitled to take any tip credits under the

8

FLSA, or to compensate Plaintiff and FLSA Collective Plaintiffs at a sub-minimum wage hourly rate, because they improperly retained gratuities, and failed to satisfy all statutory requirements for taking a tip credit.

20.     Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

21.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

### NATIONWIDE – RULE 23 CLASS ALLEGATIONS

22.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("F.R.C.P."), Plaintiffs bring this as a class action, on behalf of all current and former non-exempt employees (including, but not limited to servers, bussers, runners, hostesses, bartenders, food runners, and dishwashers, chefs, line-cooks, among others) employed by Defendants at the Restaurants on or after the date that is six years (plus 228 days extension of tolling during the COVID pandemic for New York State Restaurants) or the relevant statute of limitations for the State each Restaurant was located, before the filing of the Complaint in this case (the "Class Members" or "Class").

23.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.

24.     The proposed Class is so numerous that a joinder of all members is impracticable,

and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. All Plaintiffs are members of the Class. The class further includes a subclass of tipped employees paid at a subminimum wage rate due to an invalid tip-credit allowance ("Tip-Credit Subclass") who also number in excess of forty (40) people.  Plaintiffs are both members of the Class and Tip-Credit Subclass.

25.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (1) unpaid wage due to timeshaving, (2) unpaid wages due to a failure to fully compensate PTO such as sick leave, and (3) statutory penalties, including for violations of the Wage Theft Prevention Act ("WTPA").

26.    With regards to the Tip-Credit Subclass, Plaintiffs and the Tip-Credit Subclass suffered from Defendants' failure to pay proper minimum wages and proper overtime rates due to Defendants' invalid tip credit policy and unlawful tip retention because Defendants (i) failed to properly provide tip credit notices, including notice that employees were entitled to make-up pay for weeks when their tips did not cover the tip-credit taken, at dates of hiring and annually thereafter, (ii) deducted tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) failed to provide proper wage statements clearly indicating tip credit allowances for each payment period, (iv) failed to accurately keep track of daily tips earned and maintain records thereof, and (v) failed to properly track and compensate the full shortfall between tipped employees' earnings and the minimum wage in weeks when the employees' tips were insufficient.

10

27.     Defendants' corporate-wide policies and practices affected all Class Members and Subclass Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each employee. Plaintiffs and other Class Members as well as Subclass Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

28.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and who have previously represented plaintiffs in wage and hour cases.

29.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Members are small, in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress their wrongs. Important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications with respect to individual Class Members, establishing incompatible standards of conduct for Defendants, resulting in the impairment of

11

Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

30. Defendants and other employers throughout the country violate the RSWHL and other state wage and hour laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their current employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

31. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiffs and Class Members within the meaning of New York Labor Law and applicable state laws;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay to Plaintiffs and the Class Members for their work;

d) Whether Defendants properly notified Plaintiffs and the Class Members of their hourly rates;

e) Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all hours worked;

f) Whether Defendants required Plaintiff and Class Members to perform compensable work during purported meal breaks for which Defendants failed to compensate them;

g) Whether Defendants failed to remit all earned tips to Plaintiffs and Tip-Credit Subclass Members;

h) Whether Defendants properly provided written notice to Plaintiffs and Tip-Credit Subclass that Defendants were taking a tip credit;

i)   Whether Defendants provided proper tip credit notice to Plaintiffs and the Tip-Credit Subclass members at hiring and annually thereafter;

j)   Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

k)   Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or two hours of their work shift;

l)   Whether Defendants operated their business with a policy of failing to pay Plaintiffs and Class Members for all hours worked, due to timeshaving;

m)   Whether Defendants provided proper wage statements informing: (i) Tip-Credit Subclass of the amount of tip credit allowance for each payment period; and (ii) all non-exempt employees of information required to be provided on wage statements as required under the RSWHL and applicable state laws;

n)   Whether Defendants improperly included in the tip pool non-tipped employees, who did not serve customers; and

o)   Whether Defendants provided proper wage and hour notice, at date of hiring and annually, to all non-exempt employees, in their native language, per requirements of the RSWHL and applicable state laws.

## STATEMENT OF FACTS

*Plaintiff SANDOVAL'S Employment*

32.   In or around May 2024, Plaintiff SANDOVAL was hired to work as a busser at Defendants' Dos Caminos restaurant located at 675 Hudson Street, New York, NY 10014. Plaintiff SANDOVAL'S employment with Defendants ended in or around March 2026 when he was terminated.

33.   At all times, Plaintiff SANDOVAL was compensated at a sub-minimum wage rate due to a tip-credit deduction being taken from his hourly pay.  In 2024, Plaintiff SANDOVAL was compensated at $10.65 an hour.  In 2025, Plaintiff SANDOVAL was compensated at $11.00 an hour. In 2026, Plaintiff SANDOVAL was compensated at $11.35 an hour.

34.   FLSA Collective Plaintiffs and Tip-Credit Subclass members were compensated at similar rates.

13

35. During his employment in the summer months, from approximately April to September, Plaintiff SANDOVAL worked five (5) days per week, from Tuesday through Saturday. Throughout his summer employment he was scheduled to work from 4:00 P.M. to 9:00 P.M Tuesday through Thursday, and from 4:00 P.M. to 12:00 A.M. Friday and Saturday. During the non-summer months he worked approximately three (3) days per week with similar hours per day.

*Plaintiff RAMIREZ's Employment Background*

36. In or around February 2024, Plaintiff RAMIREZ was hired by Defendants to work as a busser at Defendants' Mastro's Steakhouse, located at 1285 6th Ave, New York, NY 10019. Plaintiff RAMIREZ's employment with Defendants ended on July 17, 2024.

37. Throughout his employment, Plaintiff RAMIREZ was scheduled by Defendants to work four (4) days a week, Thursdays through Sundays. For two (2) days a week, Plaintiff RAMIREZ worked from 5:00 p.m. until 12:30 a.m. for 7.5 hours, and for the other two (2) days a week, Plaintiff RAMIREZ worked from 6:00 p.m. until 12:30 a.m. for 6.5 hours.

38. Throughout his employment, Plaintiff RAMIREZ was compensated at a sub-minimum wage rate of $10.65 an hour, due to a tip-credit deduction being taken from his hourly pay.

39. FLSA Collective Plaintiffs and Class Members were compensated at similar hourly rates.

*Failure to Pay for All Hours Worked Due to Time Shaving During Purported Meal Breaks*

40. At all relevant times, Defendants maintained a policy and practice of providing Plaintiffs and Class Members with purported meal breaks—generally thirty (30) minutes break per shift—for which Plaintiffs and Class Members had their hours automatically reduced.

41. Notwithstanding this policy, Defendants routinely required Plaintiffs and Class Members to continue performing compensable work during their purported meal breaks.

14

42.     As a result of this practice, Plaintiffs regularly performed entire shifts without an actual meal break, but had their wages garnished as if they had had one. These meal breaks were not bona fide.

43.     Because Plaintiffs worked entire shifts without meal breaks, but were deducted for meal breaks, Defendants' time and payroll records did not reflect all of the hours that Plaintiffs actually worked, and Defendants did not compensate Plaintiffs for the time they worked during purported meal breaks.

44.     FLSA Collective Plaintiffs and Class Members were similarly subject to Defendants' policy of deducting meal breaks that were never actually given to Plaintiffs and of failing to compensate Plaintiffs for the time worked during those purported meal breaks.

45.     By failing to pay Plaintiffs and Class Members for all hours worked, including time worked during purported meal breaks, Defendants violated the FLSA and the RSWHL.

46.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to compensate Plaintiff and Class Members for all hours worked, including time worked during purported meal breaks, in violation of the FLSA and the RSWHL.

*Tip Retention Claims*

47.     Throughout their employments, Plaintiffs, FLSA Collective Plaintiffs, and Subclass Members were subjected to Defendants' unlawful tip retention policy, in violation of the FLSA and the NYLL.

48.     At all relevant times, Defendants directly retained a portion of tips earned by Plaintiffs, FLSA Collective Plaintiffs, and Subclass Members. Specifically, there was a consistent discrepancy between the tips Defendants took in and what they would distribute to their employees.

15

49.     At all relevant times, Plaintiffs earned a similar amount of tips every week, despite certain weeks being noticeably busier than others. After noticing the discrepancy, Plaintiffs SANDOVAL and RAMIREZ each separately asked to see the Restaurant's tip sheets. FLSA Collective Plaintiffs and Subclass Members also regularly asked Defendants about how the tipped system worked or the tips they earned. However, Defendants refused all such requests and never notified Plaintiffs, FLSA Collective Plaintiffs, and Subclass Members about the method for allocating tips among employees. Defendants' refusal to allow Plaintiffs, FLSA Collective Plaintiffs, and Subclass Members access to the tip sheets was done to hide the employees' properly earned tips and to hide Defendants' tip retention.

50.     Due to Defendants (i) lack of tip tracking and (ii) direct tip retention, Plaintiffs, FLSA Collective Plaintiffs, and Subclass Members failed to earn their proper tip distribution and keep all tips rightfully earned by them.

51.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of unlawfully retaining tips from Plaintiff, FLSA Collective Plaintiffs, and Subclass Members, in violation of the FLSA and the NYLL.

*Invalid Tip Credit Deductions Claims*

52.     Throughout their employments, Plaintiffs and Subclass Members were subjected to Defendants' invalid tip credit deductions in violation of the NYLL.

53.     With respect to Plaintiffs and Subclass Members, Defendants were not actually entitled to deduct any tip credit allowances under the NYLL because Defendants: (i) failed to provide proper notice that a tip credit was being claimed, which included failing to inform employees they were entitled to make-up pay between their earnings and the minimum wage on weeks their tips failed to equal or exceed the tip-credit taken by Defendants, (ii) claimed a tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties in

16

excess of two (2) hours or twenty percent (20%) of the total hours each shift, (iii) failed to accurately record the tip credit allowance taken on periodic wage statements given to Plaintiffs, and (iv) failed to accurately keep track of daily tips earned and maintain records thereof.

54. As a direct result of Defendants' invalid tip credit policy, Plaintiffs and Subclass Members were paid below the New York State minimum wage in violation of the NYLL.

55. Throughout Plaintiffs' employment, Defendants systematically required Plaintiffs and other Subclass Members to perform non-tipped duties for extended periods. For example, Plaintiff RAMIREZ was regularly assigned one such shift per week wherein he was assigned to perform non-tipped work almost exclusively side-work despite being paid at a subminimum wage rate due to a tip-credit.

56. On workdays in which Plaintiffs were not assigned to exclusively engage in non-tipped work, Plaintiffs were still required to engage in approximately 2 hours or over 20% of their shift engaged in side work, including: (i) polishing vases, (ii) taking out garbage, (iii) sweeping and mopping the floors; (iv) assuming barista duties (such as preparing drinks); and (v) setting up the outdoor area. Plaintiffs would spend more than two (2) hours each shift doing this side work. Such side work amounted to more than 20% of their total shifts. Defendants also required Subclass Members to engage in similar non-tipped work for an excessive amount of time.

57. Plaintiffs never received proper notice regarding the tip credit allowance being claimed by Defendants from his minimum wage. Similarly, FLSA Collective Plaintiffs, and the Tip-Credit Subclass members never received proper tip credit notice.

58. Further on weeks when Plaintiff, FLSA Collective Plaintiffs', and Subclass Members' tips did not equal or exceed the tip credit taken, Defendants failed to compensate the shortfall between the employees' earnings and the minimum wage.

59.    For the period beginning in 2026, Defendants either (i) misinformed Plaintiff SANDOVAL and the Tipped Subclass of the credit being taken or (ii) failed to properly compensate the Plaintiff SANDOVAL and the Tip-Credit Subclass at the proper minimum wage. As an example, for the workweek ending on March 16, 2026, Defendants informed Plaintiff SANDOVAL that they were taking a tip-credit of $5.15 per hour and paid him at a rate of $11.35 per hour.  This results in a minimum hourly rate of $16.50 per hour despite the minimum wage rate for this period equaling $17.00 in New York State.  Either Defendants took a larger tip-credit then they informed employees of or they paid at a lower minimum wage rate, either of which invalidates the tip-credit.

60.    Moreover, this failure to properly calculate the tip-credit would also result in a failure to ensure that any weeks in which Plaintiff earned less than the tip-credit in tips, a make-up payment was provided to compensate Plaintiff to at least the minimum wage.

61.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of deducting invalid tip credits from Plaintiffs' and Subclass Members' wages, in violation of the RSWHL.

*Failure to Properly Compensate Sick Leave and Paid Time Off ("PTO")*

62.    A tip credit is available only for hours during which a food service worker performs tip-producing work and receives tips sufficient to bring the reduced cash wage up to the full minimum wage. No tips are earned, and no tip credit may lawfully be taken, for hours in which the employee performs no work at all, including hours compensated as paid sick leave.

63.    The FLSA and RSWHL such as New York law independently compels the same result. Paid sick leave under RSWHL must be compensated at the employee's regular rate of pay or the applicable minimum wage, whichever is greater, the Department of Labor has expressly instructed that no allowances or credits, including tip credits, may be claimed for paid leave hours.

64.    Accordingly, when Defendants compensated Plaintiff and other tipped employees throughout the States for sick leave and any other paid time off, Defendants were required to pay the full applicable minimum wage with no reduction for any tip credit.

65.    Defendants failed to do so. Rather than pay the full minimum wage for sick-leave or PTO hours, Defendants paid Plaintiff and other tipped employees for those hours at the reduced tipped cash-wage rate.

66.    By way of example, for the workweek of July 1, 2025 through July 7, 2025 (paid by check dated July 11, 2025, Check No. 0076703740), Defendants paid Plaintiff SANDOVAL for 6.00 hours of sick leave at a rate of $11.00 per hour, for total sick-leave compensation of $66.00. The applicable New York City food-service minimum wage was then $16.50 per hour. Had Defendants paid Plaintiff SANDOVAL's sick leave at the required full minimum wage, Plaintiff SANDOVAL would have received $99.00.

67.    For this workweek alone, Defendants thus underpaid Plaintiff SANDOVAL by $33.00.

68.    As a direct and proximate result of Defendants' unlawful application of the tip credit to paid sick leave, Plaintiffs, FLSA Collective Plaintiffs, and the Class were paid less than the wages to which they were entitled and are owed the difference between the full payment owed and the reduced rate Defendants actually paid for all such hours, together with liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs pursuant to applicable law.

*Plaintiffs' and Class Members' Wage Notice Claims:*

69.    At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the RSWHL.  Specifically, four State wage laws provide penalties for this violation:

(a) California via California's Labor Code § 226(e),

19

(b) New York via NYLL § 195 (containing the requirement) and § 198(1-d) (containing the private right of action),

(c) Oregon via ORS 652.610 (containing the requirement) and ORS 652.615 (containing the private cause of action), and

(d) Massachusetts via Massachusetts C. 149 § 148 (paystub requirement) and § 150 (containing the private cause of action).

70. At all relevant times, Defendants failed to provide Plaintiff and Class Members with the wage notices required at the time of hire and as required thereafter, including but not limited to wage notices reflecting Plaintiff's actual rate of pay, any allowances claimed, the regular pay day, and other information required under RSWHL including NYLL 195.

71. At all relevant times, Defendants' wage statements (to the extent any were provided) failed to accurately reflect, among other things, the actual number of hours worked by Plaintiff and Class Members—including hours worked during purported meal breaks—in violation of RSHWL, including those of California, New York, Oregon, and Massachusetts.

72. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for wage notification claims. The Second Circuit found that the lack of such notices and statements might impair an employee's ability to seek relief for violations they may not have information about, to an extent sufficient to support standing.

73. New York courts continue to find sufficient standing to support these claims, including where, as here, an employer's failure to maintain proper wage statements arises from an unpaid meal-break practice. *See Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, at *61 (S.D.N.Y. Feb. 23, 2026).

20

74. By failing to inform Plaintiff and Class Members of the actual hours they worked and the allowances owed to them, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware that they were being underpaid. Had Defendants provided proper wage statements and notices, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked and the allowances actually owed, or (b) forthrightly acknowledge, by way of the wage statement, that the employees' wages did not correspond to the hours they actually worked or the allowances they were owed.

75. By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employees' W-2 forms. The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of benefits available to the employee— such as unemployment benefits and social security benefits. As a result, Plaintiff and Class Members were injured with respect to their benefits—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

76. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the RSWHL.

77. Plaintiff retained Lee Litigation Group, PLLC to represent him, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services if he prevails.

## STATEMENT OF CLAIM

## COUNT 1

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

78.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

79.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

80.     At all relevant times, Defendants jointly employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

81.     At all relevant times, Defendants had gross annual revenues in excess of $500,000.

82.     At all relevant times, Defendants had a policy and practice of failing to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including time worked during purported meal breaks, for all monies earned, including monies owed due to PTO, monies owed due to an invalid, and monies owed due to unlawful tip-retention, in violation of the FLSA.

83.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

84.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

85.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages

22

for hours worked, including time worked during purported meal breaks, plus an equal amount as liquidated damages.

86.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

87.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

### VIOLATION OF THE NEW YORK LABOR LAW

88.     Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

89.     At all relevant times, Plaintiff and the Class Members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

90.     At all relevant times, Defendants failed to compensate Plaintiff and Class Members for all hours worked, including hours worked during purported meal breaks, in violation of the NYLL and 12 NYCRR Part 146, including 12 NYCRR §§ 146-1.2 and 146-1.4 Plaintiffs for all hours worked, including time worked during purported meal breaks, for all monies earned, including monies owed due to PTO, monies owed due to an invalid, and monies owed due to unlawful tip-retention, in violation of NYLL.

91.     Defendants failed to properly notify employees of their hourly pay rate, in direct violation of the NYLL.

92.    Defendants failed to provide a proper wage and hour notice, on the date of hiring and as required thereafter, to all non-exempt employees, in direct violation of NYLL § 195(1).

93.    Defendants failed to provide proper wage statements with every payment issued to Plaintiff and the Class Members, as required by NYLL § 195(3).

94.    Due to Defendants' NYLL violations, Plaintiff and the Class Members are entitled to recover from Defendants their unpaid wages for all hours worked (including hours worked during purported meal breaks), damages for unreasonably delayed payments, statutory penalties under the WTPA, liquidated damages, reasonable attorneys' fees, costs, and disbursements of this action.

## COUNT III

## VIOLATION OF THE RELEVANT STATE WAGE AND HOUR LAWS

95.    Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

96.    At all relevant times, Plaintiff and Class Members employed at the Restaurants were employed by Defendants within the meaning of the Relevant State Wage and Hour Laws ("RSWHL") of those States.

97.    At all relevant times, Defendants failed to compensate Plaintiff and Class Members for all hours worked, including hours worked during purported meal breaks, for all monies earned, including monies owed due to PTO, monies owed due to an invalid, and monies owed due to unlawful tip-retention, in violation of each of the Relevant State Wage and Hour Laws.

98.    At all relevant times, Defendants had a policy and practice of failing to compensate Plaintiff and Class Members employed at Restaurants located in the States listed above for all hours worked, including time worked during purported meal breaks, in violation of the RSWHL.

24

99.     Defendants knowingly and willfully operated their business with a policy of failing to compensate Plaintiff and Class Members for all hours worked, including time worked during purported meal breaks, in violation of the RSWHL.

100.    Due to Defendants' RSWHL violations, Plaintiff, Class Members and Subclass Members are entitled to recover from Defendants their unpaid wages for all hours worked (including hours worked during purported meal breaks), statutory penalties (where available), liquidated damages (where available), pre-judgment and post-judgment interest, and reasonable attorneys' fees, costs, and disbursements of this action.

## COUNT IV

## BREACH OF CONTRACT (IN THE ALTERNATIVE)

101.    Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

102.    This Count is pleaded in the alternative to the extent that any claim for unpaid wages for hours worked—including gap-time claims for hours worked up to forty (40) hours per week that do not implicate statutory minimum wage protections, and claims seeking damages for failure to pay for all hours worked—is not covered by the FLSA, the NYLL, or the RSWHL.

103.    At all relevant times, Plaintiff and Class Members had express or implied employment agreements with Defendants under which Defendants agreed to compensate Plaintiff and Class Members at an agreed-upon hourly rate for all hours that they worked, including for paid time off.

104.    Plaintiff and Class Members performed all of their obligations under those agreements by performing the work assigned to them by Defendants.

105.    Defendants breached those agreements by failing to compensate Plaintiff and Class Members at the agreed-upon hourly rate for all hours worked, including time worked during

25

purported meal breaks for which Plaintiff and Class Members were required to clock out while continuing to perform compensable work for Defendants.

106.  As a direct and proximate result of Defendants' breach, Plaintiff and Class Members suffered damages in the form of unpaid wages for hours worked, in amounts to be determined at trial, together with pre-judgment and post-judgment interest, punitive damages where warranted by Defendants' egregious conduct, and attorneys' fees and costs.

## COUNT V

### UNJUST ENRICHMENT (IN THE ALTERNATIVE)

107.  Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

108.  This Count is pleaded in the alternative to the extent that no enforceable agreement is found to govern the compensation owed to Plaintiff and Class Members for hours worked.

109.  Plaintiff and Class Members conferred substantial benefits on Defendants by performing labor at the Restaurants for which Defendants failed to compensate them, including by performing compensable work during purported meal breaks for which they were required to clock out.

110.  Defendants knowingly accepted, received, and retained the benefits of Plaintiff's and Class Members' uncompensated labor, including the food and beverage prepared, cooked, and served by Plaintiff and Class Members at the Restaurants while clocked out during their purported meal breaks.

111.  It would be inequitable and unjust to permit Defendants to retain the benefits of Plaintiff's and Class Members' uncompensated labor without paying for that labor at the agreed-upon hourly rate.

112.    Plaintiff and Class Members are entitled to recover from Defendants the reasonable value of the labor they performed for Defendants without compensation, together with pre-judgment and post-judgment interest and any other relief the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the RSWHL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of disgorgement of all unlawfully retained tips due under the FLSA and the RSWHL;

d.    An award of unpaid wages due to Defendants' policy of timeshaving and underpayments;

e.    An award of unpaid wages due to an invalid tip credit policy, due under the RSWHL;

f.    An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law and RSWHEL wage notice and wage statement requirements;

g.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

h.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the RSWHL;

i.    An award of back pay, front pay, compensatory damages, punitive damages, and damages for egregious emotional distress, due under the FLSA and the RSWHL;

j.    An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

k.    Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l.    Designation of this action as a class action pursuant to F.R.C.P. 23;

m.    Designation of Plaintiff as Representative of Class and Subclass; and

n.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

## NY BCL §630 NOTICE AND DEMAND

Plaintiffs hereby give this notice, in writing, to each shareholder of Defendants, and any of its parents, subsidiaries, or affiliated entities that is served with the summons and complaint in this action, that they intend to hold the shareholders liable under New York Business Corporation Law § 630. This notice is given within one hundred and eighty days after termination of the employment services of Plaintiffs.

Plaintiffs also demand an examination of the record of shareholders under paragraph (b) of section 624 (Books and records; right of inspection, prima facie evidence) of New York Business and Corporation Law.

An action to enforce such liability shall be commenced within ninety days after the return of an execution unsatisfied against the Defendant upon a judgment recovered against it for such services. The provisions of this paragraph shall not apply to an investment company registered as such under an act of congress entitled "Investment Company Act of 1940."

Dated: August 4, 2026               Respectfully submitted,
      New York, New York

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

By:    /s/ *C.K. Lee*
       C.K. Lee, Esq.

28